2009 WY 65

E. Michael LIEBERMAN,
Appellant (Plaintiff),

v.

Steven A. MOSSBROOK, Forrest R. Sprout, Sandra S. Mossbrook, Michael James Ford and The Michael James Ford Trust of September 24, 1983 as Successor to The Riverton Orthopedic Clinic Pension Plan, and Riverton Orthopedic Retirement Plan, Appellees (Defendants).

Steven A. Mossbrook, Forrest R. Sprout, Sandra S. Mossbrook, Michael James Ford and The Michael James Ford Trust of September 24, 1983 as Successor to The Riverton Orthopedic Clinic Pension Plan, and Riverton Orthopedic Retirement Plan, Appellants (Defendants),

v.

E. Michael Lieberman, Appellee (Plaintiff).

Nos. S–08–0159, S–08–0160.

Supreme Court of Wyoming.

May 19, 2009.

Rehearing Denied June 23, 2009.

See also, 11 P.3d 353, 82 P.3d 274, 109 P.3d 883.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] After E. Michael Lieberman withdrew as a member of Wyoming.com LLC (Wyoming.com), Wyoming.com filed a petition for declaratory judgment seeking a determination of its rights and Mr. Lieberman filed a complaint for dissolution of the company and the return of his share of its value. Three district court determinations and three appeals to this Court followed during which it was established that Mr. Lieberman's withdrawal did not result in dissolution of the company, he was entitled to the return of his $20,000 capital contribution and he retained an equity interest in the company. Those

determinations having been made, the declaratory judgment action was dismissed.

[¶ 2] Mr. Lieberman then filed a complaint against the owners of Wyoming.com, who in the meantime had merged the limited liability company into a corporation. He alleged claims for termination of an implied trust, breach of fiduciary duty—bad faith, and conversion. The district court granted partial summary judgment for Mr. Lieberman on his conversion claim and set for trial the determination of the value of his equity interest and his entitlement to other damages, if any. After trial, the district court entered judgment on the conversion claim for Mr. Lieberman in the amount of $958,475.44. The district court found for the Mossbrooks on Mr. Lieberman's remaining claims.

[¶ 3] In his appeal from the district court judgment, Mr. Lieberman claims the district court did not follow the law established in *Lieberman v. Wyoming.com, LLC*, 2004 WY 1, 82 P.3d 274 (Wyo.2004) (*Lieberman II*), which he alleges entitled him to the return of his ownership interest in the LLC and his share of additional distributions and other benefits the shareholders received from the corporation, plus prejudgment interest. In their appeal, the owners of Wyoming.com contend Mr. Lieberman's conversion claim was barred by the statute of limitations; the district court miscalculated Mr. Lieberman's damages; the judgment finding them individually and jointly and severally liable was clearly erroneous; Michael James Ford was not a proper defendant; and the district court erred in imposing discovery sanctions. We affirm in part and reverse in part.

### ISSUES

[¶ 4] We re-phrase the issues the parties presented as follows:

1. Whether Mr. Lieberman's claim for conversion was barred by the statute of limitations.

2. Whether the district court correctly applied the law established in *Lieberman I, II* and *III*.

3. Whether the district court correctly calculated the value of Mr. Lieberman's equity interest.

4. Whether substantial evidence supported the district court's finding for the Mossbrooks on the claim for breach of fiduciary duty—bad faith.

5. Whether the members of Wyoming.com are individually liable for payment of Mr. Lieberman's equity interest.

6. Whether the district court properly imposed discovery sanctions.

### FACTS

[¶ 5] Mr. Lieberman, Steven Mossbrook and Sandra Mossbrook created Wyoming.com in 1994. In accordance with the company's operating agreement, each member received a membership certificate reflecting his or her ownership interest. The membership certificate issued to Mr. Lieberman in 1994 reflected that he was vested with a $20,000 capital contribution in Wyoming.com representing a 40% ownership interest. It further stated that his capital contribution and proportionate equity interest were subject to change and were reflected in the company's books and records.

[¶ 6] Riverton Orthopedic Clinic Pension Plan and Riverton Orthopedic Clinic Profit Sharing Plan (together, Riverton Orthopedic) became members of Wyoming.com in 1996 or 1997 and Forrest R. "Frostie" Sprout became a member in 1998. The minutes of a February 6, 1998, meeting of the members reflected the members' ownership interests at that time as follows:

| | |
|---|---|
| Steven A. Mossbrook | 51% |
| E. Michael Lieberman | 37% |
| Sandra S. Mossbrook | 5% |
| Clinic (Ford) Profit Sharing | 2 1/2% |
| Clinic (Ford) Pension Plan | 2 1/2% |
| Frostie Sprout | 2% |

[¶ 7] In February of 1998, difficulties arose between Mr. Lieberman and other members and employees of Wyoming.com. On February 27, 1998, Mr. Mossbrook determined that it was in the company's best interest to terminate Mr. Lieberman's employment with the company and remove him from his position as vice president. On March 13, 1998, Mr. Lieberman served on Wyoming.com a notice of withdrawal and demand for return of his capital contribution.

In the notice, he demanded the immediate return of "his share of the current value of the company, in cash" and asserted that the value of his interest was $400,000 plus interest from that date until paid.

[¶ 8] After receiving notice of Mr. Lieberman's withdrawal, four of the five remaining members met and voted to continue the company, accept Mr. Lieberman's withdrawal and return his $20,000 capital contribution. By letter dated March 19, 1998, Wyoming.com informed Mr. Lieberman of the members' action. On April 16, 1998, Wyoming.com sent Mr. Lieberman a check in the amount of $20,000 along with a letter informing him that "this concludes the relationship between you and Wyoming.com." On the same date, Wyoming.com cancelled Mr. Lieberman's membership certificate.

[¶ 9] Mr. Lieberman, through his attorney, advised the company that the $20,000 payment was not acceptable and renewed his demand for $400,000. Mr. Lieberman retained the check for $20,000 but did not negotiate it. His attorney subsequently misplaced the check and asked Wyoming.com to cancel it. Wyoming.com voided the check and issued another one for $20,000. At that point, however, Wyoming.com was under an order to pay the $20,000 to the district court in a garnishment action filed against Mr. Lieberman. Wyoming.com accordingly paid the $20,000 to the district court.

[¶ 10] In September of 1999, Wyoming.com sent another check to Mr. Lieberman for $7,965.00 reflecting his share of the profits up to March 13, 1998, the date of his withdrawal. Mr. Lieberman negotiated this check. The company books were amended on December 29, 1998, to reflect Mr. Lieberman's withdrawal as a member and the remaining members' equity interest as follows:

| | |
|---|---|
| Steven Mossbrook | 81% |
| Sandra S. Mossbrook | 8% |
| Clinic (Ford) Profit Sharing | 4% |
| Clinic (Ford) Pension Plan | 4% |
| Forrest Sprout | 3% |

Three years later, on December 31, 2001, Wyoming.com was merged into a corporation and the members' interests were converted to shares as follows:

| | |
|---|---|
| Steven A. Mossbrook | 801,430 shares |
| Sandra S. Mossbrook | 78,580 shares |
| Forrest R. Sprout | 41,430 shares |
| Michael James Ford Trust [1] | 78,580 shares |

[¶ 11] Meanwhile, in June of 1998, Wyoming.com had filed a petition for declaratory judgment in district court asking for a determination of the parties' rights and obligations upon Mr. Lieberman's withdrawal. At about the same time, Mr. Lieberman filed a separate action requesting dissolution of the company and the return of his interest in Wyoming.com. The district court consolidated the actions and the parties filed cross motions for summary judgment. The district court granted summary judgment for Wyoming.com, ruling that Mr. Lieberman's withdrawal did not result in dissolution of the company and he was entitled to return of his $20,000 capital contribution.

[¶ 12] Mr. Lieberman appealed claiming that his interest in Wyoming.com was greater than the amount of his capital contribution. In *Lieberman v. Wyoming.com LLC*, 11 P.3d 353 (Wyo.2000) (*Lieberman I*), this Court upheld the district court's ruling that his withdrawal did not result in dissolution of the company and he was entitled to the return of his capital contribution. We held, however, that questions remained for the district court's determination concerning what became of Mr. Lieberman's equity interest. On remand, Wyoming.com filed a motion for partial summary judgment seeking a determination that Mr. Lieberman's interest should be valued at the time he withdrew in accordance with the operating agreement. In ruling on the motion, the district court resolved the entire matter by holding that the operating agreement entitled Mr. Lieberman only to liquidation of his equity interest at its capital account value.

[¶ 13] Mr. Lieberman again appealed to this Court and, in *Lieberman II*, 2004 WY 1, 82 P.3d 274, we reversed the district court's determination, finding that neither Wyoming.com's operating agreement nor Wyoming's Limited Liability Act, Wyo. Stat. Ann.

---

1. The members approved the transfer of the interests held by Riverton Orthopedic to the Michael James Ford Trust on March 27, 2000.

§ 17–15–101, et seq. (LexisNexis 2007), provided for liquidation of a withdrawing member's equity interest; the record contained no other evidence (specifically, the membership certificate) reflecting how the parties intended to address Mr. Lieberman's interest; therefore, Mr. Lieberman retained his equity interest in the company. We remanded the case to the district court for a declaration of the parties' rights consistent with our holding.

[¶ 14] The district court entered an order declaring that Mr. Lieberman retained his equity interest in Wyoming.com. Mr. Lieberman filed a motion seeking discovery not only from Wyoming.com but from the corporation into which it had merged. Wyoming.com filed a motion pursuant to W.R.C.P. 59 to amend the judgment to reflect that the action was dismissed. When the district court denied the motion, Wyoming.com appealed to this Court.

[¶ 15] In *Wyoming.com, LLC v. Lieberman*, 2005 WY 42, 109 P.3d 883 (Wyo.2005) (*Lieberman III*), we held that the district court's order did not fully comply with our mandate in *Lieberman II* because it did not dismiss the declaratory judgment action. We remanded the case to the district court with instructions to dismiss the action. The district court entered an order dismissing the declaratory judgment action that had given rise to *Lieberman I, II* and *III.*

[¶ 16] Following the dismissal, in June of 2005, Mr. Lieberman filed his complaint against the Mossbrooks, Riverton Orthopedic and Mr. Sprout (collectively, the Mossbrooks). Mr. Lieberman alleged they had wrongfully appropriated his equity interest in Wyoming.com by redistributing it among themselves. He further alleged the Mossbrooks merged Wyoming.com into a corporation without notice to him and transferred all of the company's assets and liabilities, including his interest, to the corporation. Mr. Lieberman alleged the Mossbrooks held his equity interest in constructive trust. He sought termination of the trust and distribution of his interest. He further alleged the Mossbrooks breached the fiduciary duty of good faith and fair dealing they owed to him by refusing to provide him with reports of ownership distributions made from 1998 to 2005. He also alleged the Mossbrooks converted and retained his equity interest in violation of this Court's order in *Lieberman II.* Mr. Lieberman later filed an amended complaint naming Michael James Ford and his trust as successor to Riverton Orthopedic and adding a claim for intentional diversion of funds and punitive damages.

[¶ 17] After the Mossbrooks filed an answer denying the claims, Mr. Lieberman filed his motion seeking summary judgment on the issue of his right to the return of his ownership share and the cash dividends subsequently received from those shares. In his supporting memorandum, Mr. Lieberman argued that *Lieberman I, II* and *III* established that he retained his 37.62% ownership in Wyoming.com and the subsequent corporation and his right to dividends and other benefits according to his ownership percentage. The Mossbrooks filed a response to the motion to which they attached, among other documentation, Mr. Lieberman's membership certificate. They asserted that the certificate, which was not part of the record in the previous cases, clearly established that Mr. Lieberman's $20,000 capital contribution was his ownership interest and that was all he was ever entitled to have returned. In addition to responding to Mr. Lieberman's summary judgment motion, the Mossbrooks filed their own summary judgment motion asserting Mr. Lieberman's claims were barred by the statute of limitations.

[¶ 18] The district court denied the Mossbrooks' motion, finding that the statute of limitations began to run on January 13, 2004, the date this Court held in *Lieberman II* that Mr. Lieberman had an equity interest beyond his $20,000 capital contribution. The district court granted Mr. Lieberman's motion in part. Relying upon the *Lieberman* cases and the membership certificate, the district court concluded that, after his withdrawal, Mr. Lieberman retained his right to his proportionate equity share. The district court further concluded that Mr. Lieberman was entitled to payment of his share on December 31, 2001, the date Wyoming.com was merged into the corporation. The district court reasoned, however, that nonpay-

ment at that time was justified because the existing law, as established in *Lieberman I*, left open the question of whether Mr. Lieberman was entitled to anything more than his $20,000 capital contribution. The district court ruled that upon this Court's determination in *Lieberman II* that Mr. Lieberman retained an equity interest above and beyond his capital contribution, the Mossbrooks were required to account to Mr. Lieberman for his equity interest. Their failure to do so, the district court held, constituted conversion as a matter of law.

[¶ 19] The district court set for trial the matter of determining the value of Mr. Lieberman's equity interest in Wyoming.com as of December 31, 2001, and his entitlement to any other damages. Following the trial, the district court entered judgment for conversion against the Mossbrooks jointly and severally in the amount of $958,475.44. The district court found for the Mossbrooks on Mr. Lieberman's other claims. Both parties appealed the judgment to this Court.

## DISCUSSION

### 1. Statute of Limitations

[¶ 20] Because a determination that the statute of limitations barred Mr. Lieberman's present claim would resolve this appeal in its entirety, we begin our discussion with that issue. The district court ruled the claim was not barred because the statute of limitations began to run on January 13, 2004, the date this Court held in *Lieberman II* that Mr. Lieberman retained his equity interest. The Mossbrooks assert the district court ruling was incorrect and the statute of limitations began to run on March 13, 1998, when Mr. Lieberman made his initial demand for payment. Because Mr. Lieberman did not file his conversion claim until 2005, seven years later, the Mossbrooks assert the claim was barred.

[¶ 21] Conversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership. *Cross v. Berg Lumber Co.*, 7 P.3d 922, 929 (Wyo.2000). To establish a conversion claim, the plaintiff must prove: (1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendants lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property. *Id.*

[¶ 22] The statute of limitations for the tort of conversion is four years. Wyo. Stat. Ann. § 1–3–105(a)(iv)(B) (LexisNexis 2007). Wyoming is a discovery state, which means the statute of limitations is triggered when the claimant knows or has reason to know of the existence of a cause of action. *Cathcart v. Meyer*, 2004 WY 49, ¶ 30, 88 P.3d 1050, 1062 (Wyo.2004). That is, the statute begins to run when the claimant is chargeable with information which should lead him to believe he has a claim. *Id.* If the material facts are in dispute, the application of a statute of limitations is a mixed question of law and fact; otherwise, it is a question of law. *Id.* Statutes of limitation are intended to control the right to litigate and are arbitrary by their very nature; we, therefore, must give full force to the applicable statute without regard to the merits of particular claims. *Rawlinson v. Cheyenne Board of Public Utilities*, 2001 WY 6, ¶ 9, 17 P.3d 13, 15–16 (Wyo.2001).

[¶ 23] Applying these principles specifically to a claim for conversion, the cause of action accrues when the plaintiff knew or with the exercise of reasonable diligence should have known that his property was wrongfully converted. *Cross*, 7 P.3d at 930. Discovery does not require the complaining party to have actual notice of the conversion; it is sufficient that, with the exercise of reasonable diligence, he would have known the property was converted. *Retz v. Siebrandt*, 2008 WY 44, ¶ 12, 181 P.3d 84, 89 (Wyo.2008).

[¶ 24] This dispute began on March 13, 1998, when Mr. Lieberman withdrew from Wyoming.com and demanded return of his

proportionate share of the company's value. When Wyoming.com rejected his demand, Mr. Lieberman filed a complaint in June of 1998 seeking dissolution of the company and the return of his ownership interest which he valued at $400,000. Thus, Mr. Lieberman first asserted his claim that property belonging to him was being wrongfully withheld well within the four year statute of limitations for conversion claims. Although Mr. Lieberman did not style his cause of action in 1998 specifically as one for "conversion," he clearly alleged that he had a right to property which Wyoming.com was exercising dominion over in a manner that denied him his right.

[¶ 25] The purpose of statutes of limitation is to save courts from stale claim litigation; spare citizens from having to defend when memories have faded, witnesses have died or disappeared and evidence is lost; prevent parties from sleeping on their rights; and require diligence. *Swinney v. Jones*, 2008 WY 150, ¶ 7, 199 P.3d 512, 515 (Wyo.2008). Wyoming.com and its members have known since June of 1998 that Mr. Lieberman sought return of his full interest in the company which he alleged the company was wrongfully withholding. It can hardly be said that Mr. Lieberman slept on his rights or that the members of Wyoming.com have had to defend after memories faded, witnesses became unavailable or evidence was lost. To the contrary, these parties and claims came before the district court within three months after Mr. Lieberman withdrew and have remained fresh in the minds of all those involved ever since.

[¶ 26] Moreover, although the nature of Mr. Lieberman's claim was clear in 1998, the nature of his equity interest in Wyoming.com was not, and did not become clear until 2004 when this Court decided *Lieberman II*. Prior to *Lieberman II*, the most recent court ruling was that Mr. Lieberman's equity interest was his capital contribution. Pursuant to that ruling, Mr. Lieberman had no viable claim for conversion. Once *Lieberman II* was decided, establishing that Mr. Lieberman retained an equity interest in addition to his capital contribution, he filed his claim for conversion within six months. Under these

circumstances, we hold the district court correctly determined Mr. Lieberman's claim was not barred by the statute of limitations.

### 2. *The Law of the Case*

[¶ 27] Mr. Lieberman asserts the district court did not follow the law of the case established in *Lieberman II* when it entered a judgment that he claims essentially forced him to sell and the Mossbrooks to buy his interest in the company for $958,475.44. He cites our conclusion in *Lieberman II* that neither the Wyoming Limited Liability Company Act nor Wyoming.com's operating agreement contained a mandatory liquidation or buyout provision; this Court would not craft a remedy for the parties; and Mr. Lieberman retained his equity interest in the company. He argues *Lieberman II* precluded the remedy the district court fashioned. He asserts the only appropriate remedy under *Lieberman II* was an order requiring the Mossbrooks to return his 37.62% of the company shares and pay him 37.62% of the dividends the company and its spin-off entities paid, 37.62% of the spin-off entities themselves and his percentage of other benefits resulting from the merger up to the time of trial.

[¶ 28] Under the law of the case doctrine, a court's decision on an issue of law at one stage of a proceeding is binding in successive stages of the litigation. *Triton Coal Co. v. Husman, Inc.*, 846 P.2d 664, 667 (Wyo.1993), citing 1B James W. Moore, Jo Esha Lucas & Thomas S. Currier, MOORE'S FEDERAL PRACTICE, ¶ 0.404[1] (2d ed.1983). Ordinarily, the law of the case doctrine requires a trial court to adhere to its own prior rulings, the rulings of an appellate court, or another judge's rulings in the case or a closely related case. *Id.* at 667–68. The law of the case doctrine is a discretionary rule which does not constitute a limitation on the court's power but merely "expresses the practice of courts generally to refuse to reopen what has been decided." *Brown v. State*, 953 P.2d 1170, 1174 (Wyo.1998).

[¶ 29] The law of the case doctrine is subject to some exceptions. *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1144

(10th Cir.2006). One of those exceptions applies when the evidence in a subsequent trial is substantially different from that presented in the earlier proceeding. *Id.* Additionally, the law of the case doctrine applies only to issues actually decided, not to issues left open. 18B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: Jurisdiction § 4478 (2d ed.2002).

[¶ 30] In his effort to bind the district court and this Court to his reading of the prior *Lieberman* decisions, Mr. Lieberman overlooks the limited scope of those decisions. In the prior *Lieberman* cases, we determined from the record before us that all that could be said was that Mr. Lieberman retained an equity interest in Wyoming.com. We made it very clear in both *Lieberman I* and *II* that the conclusion we reached was based entirely on the pertinent provisions of the Wyoming Limited Liability Company Act and the parties' agreements without benefit of other evidence. In *Lieberman I,* 11 P.3d at 361, we said:

> Under [the operating agreement], it is clear that a member's interest in Wyoming.com was to be represented by membership certificates. There is nothing in the record indicating what became of Lieberman's membership certificate; there is no indication it has been cancelled or forfeited....
>
> . . . .
>
> [T]he parties remain uncertain as to their legal relationship because it is unclear what became of Lieberman's ownership or equity interest (as represented by a membership certificate). Therefore, we conclude it appropriate to remand to the district court for a full declaration of the parties' rights.

[¶ 31] In *Lieberman II,* ¶ 5, 82 P.3d at 277, we reiterated the statement in *Lieberman I* that it was unclear what became of Mr. Lieberman's equity interest "as represented by a membership certificate." Then, after noting that no new evidence was presented on remand leaving us with the identical record before us in *Lieberman I,* we concluded:

> There is no contractual provision for a buy-out of [Mr. Lieberman's] equity interest. Therefore, Lieberman cannot force Wyoming.com to buy his interest, and Wyoming.com cannot force Lieberman to sell his interest. Because the members of Wyoming.com failed to contractually provide for a buy-out, Lieberman remains an equity holder in Wyoming.com.

*Lieberman II,* ¶ 19, 82 P.3d at 282.

[¶ 32] As these excerpts make clear, our decisions in the prior *Lieberman* cases were based upon an incomplete record from which we were able to determine only that Mr. Lieberman retained an equity interest in Wyoming.com. Those decisions were not based upon a complete record after a trial in which the issue of what became of the equity interest was fully adjudicated. When Mr. Lieberman returned to district court in 2005 after *Lieberman III* claiming conversion of his equity interest and seeking a determination of the value of that interest, his membership certificate—the evidence to which this Court pointed the parties in *Lieberman I*— was presented for the first time. Additionally, the Mossbrooks presented evidence showing that Mr. Lieberman's $20,000 capital contribution was returned to him by payment of that amount to the district court in the garnishment proceedings filed against him. At that point, the district court appropriately exercised its discretion by considering the status of Mr. Lieberman's equity interest in light of the new evidence. The law of the case doctrine did not limit the district court to any particular method for determining the value of Mr. Lieberman's equity interest in a conversion action.

[¶ 33] Mr. Lieberman asserts that the district court's ruling contravenes this Court's statements in *Lieberman II,* ¶ 2, 82 P.3d at 276, that "he retains his equity interest," he is under no obligation to sell and Wyoming.com is under no obligation to buy his equity interest and "the question of valuation is moot." Mr. Lieberman misconstrues this Court's statements and overlooks the evidence and claims presented in this action that were not before the Court in *Lieberman I, II* and *III.* Moreover, he fails to consider that he filed the conversion action expressly

seeking a determination as to the value of his interest and an order requiring payment of that amount.

[¶ 34] As we have said, our statements in the prior *Lieberman* cases were based upon the claims made and the evidence before us and are of limited value in the present action. Nothing in those previous decisions precluded the district court, upon presentation of Mr. Lieberman's conversion claim and new evidence related to it, from determining whether a conversion had occurred and, if so, the value of the converted property. We find no merit in Mr. Lieberman's claim concerning the law of the case doctrine.

### 3. Date of Conversion and Valuation of Mr. Lieberman's Equity Interest

[¶ 35] Mr. Lieberman asserts the district court erred in awarding him a judgment in the amount of $958,475.44. He claims that after his withdrawal he retained his interest in the company and, when Wyoming.com merged into the corporation, was entitled to the return of his ownership share and his share of other benefits the Mossbrooks diverted and retained measured at the time of trial. The Mossbrooks contend the only relief available to Mr. Lieberman was either the return of his capital contribution or the fair value of his ownership share at the time he withdrew.

[¶ 36] The district court concluded that Wyoming.com converted Mr. Lieberman's equity interest on December 31, 2001, the date the company was merged into the corporation, and he was entitled to payment based upon the value of his proportionate share of the company as of the date of merger. As of that date, the district court concluded, Wyoming.com's separate existence as a limited liability company ceased and, pursuant to paragraph 10 of the company articles of organization, Mr. Lieberman was entitled to payment based upon the value of his equity interest. The district court relied upon paragraph 10 of the articles of organization which provided as follows:

10. **Return of Capital.** The members' right to the return of capital shall be determined from the company's books, as of the effective date of termination of the

company, based on generally accepted accounting practices.

[¶ 37] In arriving at the value of Mr. Lieberman's equity interest as of the date of merger, the district court also considered the following paragraphs of Article VI of the operating agreement:

6.1 The Company shall maintain accurate records of the Capital Accounts of the Members. Each Member's capital account shall be credited with:

a. The amount of money the Member has contributed to the Company.

b. The fair market value of property the [Member] has contributed to the Company.

c. The Member's distributive share of Company income and gain.

. . . .

6.2 Upon liquidation of the company (or any Member's interest in the Company), liquidating distributions shall in all cases be made in accordance with the positive capital balances of the Members. If any Member has a deficit balance in his capital account following the liquidation of his interest in the Company, as determined after taking into account all capital account adjustments for the Company taxable year during which such liquidation occurs, he is unconditionally obligated to restore the amount of such deficit balance to the Company by the end of such taxable year (or, if later, within 90 days after the date of such liquidation).

6.3 The Members may from time to time declare, and the Company may distribute, accumulated profits determined not necessary for the cash needs of the Company's business. Unless otherwise provided, retained profits shall be deemed an increase in capital contribution of the Company.

[¶ 38] The district court also applied the following statute:

**§ 17–15–126. Distribution of assets upon dissolution.**

(a) In settling accounts after dissolution, the liabilities of the limited liability compa-

ny shall be entitled to payment in the following order:

(i) Those to creditors, in the order of priority as provided by law, except those to members of the limited liability company on account of their contributions;

(ii) Those to members of the limited liability company in respect of their share of the profits and other compensation by way of income on their contributions; and

(iii) Those to members of the limited liability company in respect to their contributions to capital.

(b) Subject to any statement in the operating agreement, members share in the limited liability company assets in respect to their claims for capital and in respect to their claims for profits or for compensation by way of income on their contributions, respectively, in proportion to the respective amounts of the claims.

[¶ 39] From these provisions, the district court in effect concluded that on December 31, 2001, in addition to his capital contribution, Mr. Lieberman was entitled to his distributive share of any gain in company money and property, plus his share of undistributed money or property, together with his share of profits and income on contributions. From evidence presented by the parties, the district court determined that Mr. Lieberman's 37.62% share of total member capital as of December 31, 2001, was $341,855.20, his share of distributed earnings through 2001 was $341,673.00 and his total equity interest was $683,528.20. That amount together with interest at the statutory rate of 7% per year from January 2002 through 2007 plus interest at the rate of $131.09 from January 1, 2008 to the date of the decision led to a total judgment of $978,475.44, less the $20,000 Wyoming.com had already paid.

[¶ 40] We review the district court's decision following a bench trial by applying the following standards:

The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Cook v. Eddy,* 2008 WY 111, ¶ 6, 193 P.3d 705, 708 (Wyo.2008) (citations omitted). With regard to the trial court's findings of fact,

we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Id.* The district court's conclusions of law, however, are subject to our *de novo* standard of review. *Id.*

[¶ 41] Having considered all of the properly admissible evidence in the record, particularly the membership certificate and the check for $20,000 paid to the district court in the garnishment action, we cannot agree with the district court's determination that Mr. Lieberman's equity interest was to be valued as of December 31, 2001, the date of the merger.[2] It is undisputed that Mr. Lieberman withdrew his membership from Wyoming.com and demanded return of his capital contribution on March 13, 1998. Additionally, it is now undisputed that in accor-

---

2. Although we reverse the district court's legal ruling with respect to the value of Mr. Lieberman's interest, we find it important to state that this Court is in no way critical of the district court's efforts to resolve this case. To the contrary, given the circuitous path this dispute has taken, we commend the district court for its thoughtful and thorough consideration of the evidence presented at trial in light of the prior decisions and its efforts to craft a reasonable end to this litigation.

dance with his demand, Wyoming.com wrote him a check for $20,000 and cancelled his membership certificate on April 16, 1998. From that date, Mr. Lieberman's investment in the company as represented by his capital account was zero and he was no longer a member. He did, however, retain his equity interest in the sense that he remained entitled to his share of the company's earnings while he was an investor.

[¶ 42] Mr. Lieberman's situation it turns out was different from that of a transferee. In *Lieberman II*, ¶ 16, 82 P.3d at 281 (footnote omitted), we said:

> The operating agreements clearly anticipate a situation where a person could be an equity owner in Wyoming.com but not a member. Provision 4.3 of the Operating Agreement, quoted above, provides that, if a transferee of an ownership interest is not unanimously approved by the remaining members, the transferee maintains the rights of equity ownership but will not be a member. Logically, given the absence of any contractual provision to the contrary, there is no reason to treat a withdrawing member any differently from someone who buys into Wyoming.com without becoming a member. Thus, Lieberman is not a member of Wyoming.com, but he maintains his equity interest and all rights and obligations attendant thereto.

However, Paragraph 4.3 of the operating agreement dealing with transfers of shares does not address the situation where a member's capital contribution has been returned. In a transfer, the capital contribution remains with the company and the transferee receives the ownership interest commensurate with the capital contribution. In the present case, there was no remaining capital contribution as of April 16, 1998; consequently, Mr. Lieberman was neither a member nor an investor. To be consistent with the way in which the parties' agreements treat other situations, his interest must be treated as if it was "liquidated" upon the cancellation of his membership certificate and return of his capital contribution.

[¶ 43] As reflected above, Article VI, paragraph 6.2, of the Wyoming.com operating agreement provided that upon liquidation of any member's interest in the company, liquidating distributions were to be made in accordance with the members' positive capital balances. Paragraph 6.2 further provided that the members' capital accounts were to be credited with the amount of money the member had contributed, the fair market value of property the member contributed and the member's distributive share of company income and gain; the members' capital accounts were to be debited with the amount of money the company distributed to the member, the fair market value of property distributed to the member and the member's distributive share of company loss and deduction.

[¶ 44] Pursuant to these provisions, upon cancellation of Mr. Lieberman's membership and return of his capital contribution, Wyoming.com was required to make liquidating distributions to him in accordance with the amounts credited and debited in his capital account at that time or risk a claim for conversion. Wyoming.com did not make those distributions and, by its failure to do so, converted Mr. Lieberman's equity interest. The district court correctly concluded that Mr. Lieberman established the elements of conversion as a matter of law. That is, he was legally entitled to payment of his equity interest at the time his membership was cancelled and his capital contribution returned; Wyoming.com failed to pay him the value of his equity interest; he demanded payment; Wyoming.com rejected his demand; and he sustained damages. *Cross*, 7 P.3d at 929.

[¶ 45] While this conclusion is clear from the record presently before us, it was not clear from the record before us in the prior *Lieberman* cases. Without the cancelled membership certificate, Mr. Mossbrook's testimony that the certificate was in fact cancelled April 16, 1998, and the evidence showing that Wyoming.com paid the $20,000 capital contribution to the district court in the garnishment proceeding, questions remained as to the status of Mr. Lieberman's equity interest. There now being no question that Wyoming.com cancelled Mr. Lieberman's membership certificate and returned his capital contribution on April 16,

1998, it is clear that he was entitled to liquidating distributions as of that same date. Mr. Lieberman has never received those distributions and, pursuant to § 17–15–142, the corporation [3] is liable to him for conversion.

[¶ 46] While this result may, at first blush, seem inconsistent with the statement in *Lieberman II* that neither Mr. Lieberman nor Wyoming.com could force a liquidation of his interest, we reiterate that the statement was made on the basis of the limited claims and evidence presented. In any event, the statement in *Lieberman II* never foreclosed Mr. Lieberman from filing a conversion claim. Once he filed the conversion claim and the Mossbrooks presented evidence establishing that his membership and investment ended in 1998, the result was clear—Wyoming.com was required by the parties' agreements to treat his equity interest as liquidated and its failure to do so was a conversion.

■■■ [¶ 47] Before addressing the valuation of the distribution amounts to which Mr. Lieberman was entitled, we find it important to state that even absent the membership certificate, the prior *Lieberman* decisions were never intended to suggest that Mr. Lieberman had any legitimate claim to a shareholder interest in the successor corporation. The corporation was not a party to any of those proceedings and the Court had no information as to the nature of the corporation at the time those cases were before it. In addition, § 17–15–142(a)(vi) provides:

"former holders of membership interests of every domestic limited liability company party to the merger are entitled only to the rights provided in the plan of merger." The plan of merger approved by the members of Wyoming.com and shareholders of the corporation provided:

> The members of the limited liability company having existing capital contributions shall receive a shareholder interest in the corporation in proportion to their percentage of ownership in the limited liability company as stated in the most recent amendment to the articles of organization on file with the Wyoming Secretary of State.

The evidence is undisputed that Mr. Lieberman had no "existing capital contribution" and was not a member at the time of the merger.

■■■ [¶ 48] Ordinarily, a determination by this Court that a party is entitled to payment in accordance with the terms of a written agreement would require remand to the district court for determination of the payment amount. This, however, is not an ordinary case. What began in 1998 with a declaratory judgment petition and complaint for dissolution evolved into an unnecessarily complicated and protracted legal battle.[4] We are disinclined to send this back yet again for the district court to resolve.

■■■ [¶ 49] We have consistently stated that the goal in awarding damages is to make the injured party whole to the ex-

---

**3.** Section 17–15–142 provides that when a merger takes effect the separate existence of the LLC ceases, all LLC property vests in the corporation and the corporation obtains all liabilities of the LLC.

**4.** We are reminded of the following passage from the novel *Bleak House*, by Charles Dickens:

> Jarndyce and Jarndyce drones on. This scarecrow of a suit has, in course of time, become so complicated that no man alive knows what it means. The parties to it understand it least, but it has been observed that no two Chancery lawyers can talk about it for five minutes without coming to a total disagreement as to all the premises. Innumerable children have been born into the cause; innumerable young people have married into it; innumerable old people have died out of it. Scores of persons have deliriously found themselves made parties in Jarndyce and Jarndyce without knowing how

> or why; whole families have inherited legendary hatreds with the suit. The little plaintiff or defendant who was promised a new rocking-horse when Jarndyce and Jarndyce should be settled has grown up, possessed himself of a real horse, and trotted away into the other world. Fair wards of court have faded into mothers and grandmothers; a long procession of Chancellors has come in and gone out; the legion of bills in the suit have been transformed into mere bills of mortality; there are not three Jarndyces left upon the earth perhaps since old Tom Jarndyce in despair blew his brains out at a coffee-house in Chancery Lane; but Jarndyce and Jarndyce still drags its dreary length before the court, perennially hopeless.

> Charles Dickens, *Bleak House*, 4 (Oxford University Press 1991) (1853).

tent that it is possible to measure an injury in terms of money. *Bush v. State*, 2003 WY 156, ¶ 23, 79 P.3d 1178, 1186 (Wyo.2003). An injured party is made whole when he is placed in the same financial position he would have been in had the wrong not been committed. *Id.* In computing damages, the primary objective is to determine the amount of loss, applying whatever rule is best situated to that purpose. *Id.* The measure of damages for the conversion of personal property is the fair market value of the property at the time of loss. *O's Gold Seed Co. v. United Agri–Products Fin. Servs., Inc.*, 761 P.2d 673, 676 (Wyo.1988).[5] We have also said that in conversion cases, the equivalent of interest on the value of converted property is recoverable as an element of damages. *ANR Prod. Co. v. Kerr–McGee Corp.*, 893 P.2d 698, 704 (Wyo.1995).

[¶ 50] Having reviewed the record in its entirety, we conclude the elements of conversion were met in April of 1998, rather than three years later when Wyoming.com was merged into the corporation. However, irrespective of when the conversion occurred, the valuation of Mr. Lieberman's interest must be determined in an equitable manner in light of the parties' agreements and in a manner that reflects the value of his investment and the damages he incurred when Wyoming.com failed to pay him. Even if we were to conclude the conversion occurred at the time of the merger, the value of Mr. Lieberman's interest must still be measured by his share of the value of the company at the time he withdrew and received his capital contribution, together with interest on that amount. In that manner he is made whole and placed in the same financial position he would have been had the wrong not been committed.

[¶ 51] The evidence presented at trial showed that in his March 1998 notice of withdrawal, Mr. Lieberman demanded $400,000 in payment for his interest in Wyoming.com. Although his written demand stated that the $400,000 was based on a recent offer from the majority shareholder, there is no evidence in the record supporting that valuation of his ownership interest. Other than his unsupported $400,000 demand, Mr. Lieberman presented no evidence of the value of his equity interest as of the date he withdrew.

[¶ 52] The Mossbrooks contend that a January 25, 1998, offer to purchase Mr. Mossbrook's interest represents the best estimate of Wyoming.com's value at the time Mr. Lieberman withdrew. Based upon the purchase offer, an independent appraiser retained by the Mossbrooks valued Mr. Lieberman's equity interest on the date of his withdrawal at $100,000. Subtracting from that amount the $20,000 returned to Mr. Lieberman as his capital contribution and the $7,965 paid to him in September 1999, the appraiser concluded his equity interest amounted to $72,035. No evidence was presented refuting the appraisal. From the evidence presented, we conclude the value of Mr. Lieberman's interest at the time and place of the conversion was $72,035 together with interest at the rate of 7% per year from the date of his withdrawal.

### 4. Breach of Fiduciary Duty

[¶ 53] Mr. Lieberman also contends the district court erred in finding for the Mossbrooks on his claim that they breached a fiduciary duty owed to him. In his June 2005 complaint, Mr. Lieberman alleged that the Mossbrooks, as majority shareholders, owed him, as minority shareholder, a fiduciary duty of good faith and fair dealing to provide him with K–1 reports and tax returns, and minutes and reports of ownership

---

5. There is substantial authority that if the defendant is a willful or bad faith converter, the measure of damages is the full value of the converted property at the time and place, as enhanced by the converter. *Western Nat'l Bank of Casper v. Harrison*, 577 P.2d 635, 641 (Wyo.1978). As we have noted, the district court found for the Mossbrooks on Mr. Lieberman's claims for breach of implied duty of good faith, intentional wrongful diversion and punitive damages. Our review of the record confirms that no evidence was presented that Wyoming.com or its members acted in bad faith in withholding Mr. Lieberman's interest. Therefore, the damages are limited to the value of the interest at the time it was converted, April 16, 1998. In addition, Mr. Lieberman did not appeal the district court's ruling with respect to the claims for implied trust, intentional diversion or punitive damages.

distributions the company made from 1998 through 2005. After Mr. Lieberman withdrew, Wyoming.com returned his capital contribution, sent him another check for $7,965 for his share of the company's 1998 income, and, in 1999, sent him a copy of his last K–1. Mr. Lieberman had no right to K–1 reports and tax returns, or minutes and reports of ownership distributions the company made thereafter. The Mossbrooks did not breach their fiduciary duty by failing to provide him copies of those documents.

### 5. Judgment Against the Members/Shareholders Individually and Joint and Several Liability

[¶ 54] The Mossbrooks claim that the district court erred in failing to rule on its claim that Wyoming.com was the proper defendant in this action and the individual members, now shareholders, have no liability. The Mossbrooks raised the issue as an affirmative defense in their answer and raised it again over the course of the proceedings. From the record presented, it does not appear that the district court ruled on the issue although it did deny a related motion Mr. Lieberman filed for an order prohibiting the Mossbrooks from being indemnified by the company for any judgment.[6]

 [¶ 55] Generally, neither limited liability company members nor corporate shareholders are individually liable for the acts of the company or the corporation. Section 17–15–113 provides:

> Neither the members of a limited liability company nor the managers of a limited liability company managed by a manager or managers are liable under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company.

Section 17–16–622(b) of the Wyoming Business Corporation Act provides:

> Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debts of the corporation except that he

may become personally liable by reason of his own acts of conduct.

[¶ 56] However, when evidence is presented that adherence to the fiction of the separate corporate existence would sanction a fraud or promote injustice, courts will disregard the separate identity and hold shareholders individually liable to third parties for damages caused by the corporation's acts. *Miles v. CEC Homes, Inc.*, 753 P.2d 1021, 1023 (Wyo.1988). We have concluded that the equitable remedy of piercing the veil is also available in the context of limited liability companies, although the factors justifying piercing the veil may be different than in the corporate setting. *Kaycee Land and Livestock v. Flahive*, 2002 WY 73, ¶ 4, 46 P.3d 323, 328–29 (Wyo.2002).

 [¶ 57] Ordinarily, when a party seeks to pierce the corporate or limited liability company veil, the company is named in the complaint. *See, for example, Y–O Invs., Inc. v. Emken*, 2006 WY 112, 142 P.3d 1127 (Wyo.2006); *Kaycee Land and Livestock*, 2002 WY 73, 46 P.3d 323; *Jackson Hole Traders, Inc. v. Joseph*, 931 P.2d 244 (Wyo. 1997). Moreover, evidence must be presented showing that piercing the veil is necessary to prevent fraud or injustice. Here, the issue of piercing the veil was never raised by Mr. Lieberman or addressed by the district court and yet a judgment was entered finding the Mossbrooks individually liable to Mr. Lieberman for nearly $1,000,000. The district court entered the judgment against them individually despite finding in their favor on Mr. Lieberman's claims for breach of fiduciary duty—bad faith, intentional wrongful diversion of assets and punitive damages. The district court also entered the judgment despite expressly finding that Mr. Lieberman's conduct was egregious, the Mossbrooks' conduct was not egregious, Wyoming.com was justified in terminating him and what followed was "a battle of unreasonable expectations on the part of both parties concerning the economic consequences of *[Mr. Lieberman's] actions*." (emphasis in original). There simply is nothing in the

---

6. The only reference to the motion appears in the district court's pretrial conference order which states: "Plaintiff's Motion for Partial Summary Judgment to Void the Attempt by the Defendant to be Indemnified by the Company, filed July 6, 2007, is denied."

record to support a determination that the separate identity of Wyoming.com or the corporation should have been disregarded and the members or shareholders held individually liable.

[¶ 58] Having reached that conclusion, we are left to decide where that leaves this case. Given its lengthy history, we are not inclined to reverse and remand for further proceedings in what already has been unnecessarily protracted litigation. W.R.C.P. 21 provides:

> Misjoinder of parties is not ground for dismissal of an action. *Parties may be dropped or added by order of the court* on motion of any party or *of its own initiative at any stage of the action and on such terms as are just.*

F.R.C.P. 21, which contains the same language, has been held to allow the dismissal or addition of parties to an action even after the trial has concluded and the judgment has been entered and appealed. 7 Charles Alan Wright, Arthur R. Miller, Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE: Civil, § 1688.1 (3d ed.2001). In *Mullaney v. Anderson*, 342 U.S. 415, 417, 72 S.Ct. 428, 430, 96 L.Ed. 458 (1952), the Court allowed the addition of parties after the case reached the Supreme Court. The Court noted that the addition of the parties earlier would not have affected the course of the litigation and dismissing the petition and requiring the plaintiffs to start over in district court "would entail needless waste and runs counter to effective judicial administration." *Id.*

[¶ 59] W.R.A.P. 17.02 provides:

> If substitution of a party in the appellate court is necessary ... *for any reason* other than death, substitution shall be effected in accordance with the procedure prescribed in Rule 17.01.

(emphasis added). These rules clearly contemplate the addition and substitution of parties at any stage in the action. Adding Wyoming.com at this point prejudices no one. The course of this litigation would not have been different if Wyoming.com had been named as a defendant, as it should have been, from the beginning. Having concluded that no grounds exist for piercing the corporate veil, the members can have no individual liability for the acts of Wyoming.com.

[¶ 60] Section 17–15–142(a) of the Wyoming Limited Liability Company Act provides in pertinent part that when a merger takes effect:

> (i) The separate existence of every domestic limited liability company that is a party to the merger ... ceases;
>
> (ii) The title to all real estate and other property owned by each domestic limited liability company party to the merger is vested in the surviving ... corporation without reversion or impairment;
>
> (iii) The surviving domestic ... corporation obtains all liabilities of each domestic limited liability company party to the merger;
>
> (iv) A proceeding pending ... against any domestic limited liability company party to the merger may be continued as if the merger had not occurred, or the surviving domestic ... corporation may be substituted in the proceeding for the domestic limited liability company whose existence ceased.

Pursuant to this provision, Wyoming.com, the corporation, is liable to Mr. Lieberman for the corrected judgment amount and must be added as a party defendant/appellee to this action on remand.

[¶ 61] Our determination that the corporation is liable to Mr. Lieberman makes it unnecessary for us to address the Mossbrooks' claim that the district court improperly held them jointly and severally liable. The shareholders have no liability to Mr. Lieberman, jointly and severally or otherwise. This outcome also makes it unnecessary for us to address the Mossbrooks' claim that Michael J. Ford, individually, was not a proper defendant. Neither he nor the trust established in his name is liable to Mr. Lieberman for the corrected judgment.

### 6. Discovery Sanctions

[¶ 62] After the Mossbrooks objected to some of Mr. Lieberman's discovery requests, the district court entered an order in July of 2007 overruling their objections and requir-

ing them to produce documents, answer interrogatories and present Mr. Mossbrook for completion of his deposition. In August of 2007, Mr. Lieberman filed a petition for order to show cause why the Mossbrooks should not be held in contempt alleging that they had not complied with the July order. In November 2007, Mr. Lieberman filed a motion for sanctions in which he claimed the documents still had not been produced and Mr. Mossbrook had not appeared to complete his deposition. Following a hearing, the district court entered an order granting the motion and directing the Mossbrooks to comply with the discovery requests.

[¶ 63] The Mossbrooks contend the district court abused its discretion when it ordered them to pay $3,540.95 in attorney fees and expenses Mr. Lieberman incurred in obtaining discovery. They assert they produced the documents by making them available for inspection and copying as provided in W.R.C.P. 34(b)(i). They further assert that Mr. Mossbrook was not required to appear at the deposition noticed by Mr. Lieberman because they had filed a motion for protective order which stayed the deposition pending the court's ruling.

[¶ 64] District courts are vested with wide discretion on discovery matters. *McCulloh v. Drake*, 2005 WY 18, ¶ 16, 105 P.3d 1091, 1095 (Wyo.2005). A district court's discretion with regard to sanctions extends even to the point of entering a default judgment when a party violates a discovery order. *Global Shipping & Trading, Ltd. v. Verkhnesaldincky Metallurgic Co.*, 892 P.2d 143, 146 (Wyo.1995). Nonetheless, the court's discretion is not unlimited—reversal may be in order when the court's ruling rests on clearly untenable or unreasonable grounds. *McCulloh*, ¶ 16, 105 P.3d at 1095. In considering whether a district court abused its discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. *City of Gillette v. Hladky Constr., Inc.*, 2008 WY 134, ¶ 109, 196 P.3d 184, 212 (Wyo.2008).

[¶ 65] The district court's July 2007 order overruled the objections and required the Mossbrooks to produce the specifically identified documents and make Mr. Mossbrook

available to complete his deposition. They responded to the order by informing Mr. Lieberman that the documents were available for inspection at the company offices and would not otherwise be produced and by objecting to Mr. Mossbrook's deposition taking place at the offices.

[¶ 66] It seems clear from the July 2007 order that the district court was directing the Mossbrooks to provide Mr. Lieberman with the specific documents he requested, not to make them generally available for him to review and copy at the offices. When the Mossbrooks had not complied with that order by November, the district court acted within its discretion in imposing sanctions. Likewise, the district court could have reasonably concluded that sanctions were appropriate when, after it ordered that Mr. Mossbrook be made available for completing his deposition, the Mossbrooks responded to the notice by informing Mr. Lieberman that the location for the deposition was "not possible" and filing a motion for protective order. The Mossbrooks' actions with regard to the documents and the deposition did not comply with the district court's order. The order granting sanctions is affirmed.

## CONCLUSION

[¶ 67] Mr. Lieberman's 2005 complaint was not barred by the statute of limitations. This Court's decisions in *Lieberman I, II* and *III* did not establish law of the case precluding the district court from considering the status of Mr. Lieberman's equity interest in light of his conversion claim and evidence presented for the first time after the earlier decisions were rendered. Given the evidence establishing that Mr. Lieberman's membership and equity interest in Wyoming.com ended in 1998, and the applicable statutory and contractual provisions, the district court's judgment valuing his equity interest as of 2001 was erroneous as a matter of law.

[¶ 68] The Mossbrooks presented evidence that the value of Mr. Lieberman's interest at the time he withdrew in 1998 was $100,000 less the $27,965 they returned to him. Other than his written demand for $400,000, Mr. Lieberman presented no evi-

dence showing the value of his interest on the date he withdrew. From the record before us, we conclude substantial evidence supported the Mossbrooks' calculation and we hold that Mr. Lieberman is entitled to a judgment of $72,035 plus interest. Because the parties against whom he brought his claims are not liable, the corporation must be substituted as the defendant when the judgment is entered. We affirm the district court's order granting sanctions against the Mossbrooks, although the order must be amended on remand to reflect that Wyoming.com, rather than the individual members, is the responsible party.

[¶ 69] Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.