2010 WY 110

**Scott and Rhonda TERRIS, Husband and Wife, Appellants (Plaintiffs),**

v.

**Edward KIMMEL and Edwal Enterprises, Inc., Appellees (Defendants).**

**No. S–10–0028.**

Supreme Court of Wyoming.

Aug. 5, 2010.

cused shall enjoy the right ... to be confronted with the witnesses against him...."

Representing Appellants: Katherine D. Peters and Thomas S. Peters of Peters Associates, LLC, Teton Village, Wyoming.

Representing Appellees: Peter F. Moyer of Jackson, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

VOIGT, Justice.

[¶1] Scott and Rhonda Terris (the Terrises) appeal the district court's Judgment, arising from a dispute relating to a lease agreement with Edwal Enterprises, Inc. and Edward Kimmel as principal of Edwal Enterprises, Inc. (Kimmel). Finding no error on the part of the district court, we will affirm.

## ISSUES

[¶2] 1. Did the district court err as a matter of law when it found that the Terrises

* Chief Justice at time of expedited conference.

breached the lease agreement and that Kimmel did not breach the lease agreement?

2. Did the district court err by finding that Kimmel did not commit a conversion, that Kimmel did not act with willful misconduct, and that Kimmel did not violate the implied covenant of good faith and fair dealing?

3. Did the district court err as a matter of law when it awarded attorney's fees and costs to Kimmel?

## FACTS

[¶ 3] The Terrises rented a storage unit from Kimmel in 1998, pursuant to a written lease agreement, which they continued renting until the summer of 2006 when the current dispute arose. Kimmel notified the Terrises via letter several times between April and August of 2006 that they were over seven months behind in rental payments. In July of 2006, Kimmel and his employee smelled gasoline fumes coming from the Terrises' storage unit so they cut the lock and entered the unit, because storage of flammable and explosive materials is prohibited by the lease agreement. According to Kimmel, he and his employee removed "three full propane tanks and two full 5 gallon gas containers," as well as "a lot of junk," such as a moldy horse blanket and lumber.

[¶ 4] The Terrises contacted Kimmel in August of 2006 after having received one of Kimmel's letters regarding the Terrises' default for nonpayment. The Terrises and Kimmel met at the storage unit facility and the Terrises paid most of the delinquent rent.[1] The Terrises also requested that Kimmel allow them to rent the unit for another month, which Kimmel agreed to do and the Terrises paid for the additional month at that time.

[¶ 5] In August of 2007, the Terrises filed a complaint against Kimmel alleging that he committed conversion of their property by removing items valued at more than $10,000 from their storage unit.[2] Kimmel denied the allegations of conversion and counterclaimed

for breach of contract. The district court found that no conversion occurred, that Kimmel did not breach the lease agreement, and that the Terrises had breached the lease agreement. The district court also awarded attorney's fees and costs to Kimmel pursuant to the lease agreement. This timely appeal by the Terrises followed.

## DISCUSSION

### Did the district court err as a matter of law when it found that the Terrises breached the lease agreement and that Kimmel did not breach the lease agreement?

█ [¶ 6] The Terrises make several arguments relating to this issue. First, the Terrises argue that the district court erred by finding that the lease agreement had not been amended through course of conduct or a separate oral agreement to allow the Terrises to pay rent several times a year, rather than monthly as the written lease agreement provided. Specifically, the Terrises argue that they had a separate oral agreement with the manager of the storage unit to allow them to pay their rent only several times a year, rather than monthly. Alternatively, the Terrises argue that by actually paying only several times a year and Kimmel accepting payment, their course of conduct amended the written lease agreement accordingly. Second, the Terrises argue that because the district court erred in finding that the lease agreement had not been amended to allow them to pay several times a year, rather than monthly, the district court erred in finding the Terrises in breach for not making timely payments. Finally, the Terrises argue that the district court erred by finding that Kimmel did not breach the lease agreement by removing their property from the storage unit and taking it to the dump.

█ [¶ 7] To address the Terrises' arguments we must examine and interpret the lease agreement. We have repeatedly stated

---

1. Kimmel testified that the Terrises did not pay the full amount owed to Kimmel, but that Kimmel did not press the issue.

2. More about the specific property alleged to have been converted will be discussed below.

the following in relation to interpreting contracts:

The primary focus is on determining the intent of the parties to the contract. The initial question is whether the language of the contract is clear and unambiguous. If it is, then the trial court determines the parties' intent from the contract language alone. It does not consider extrinsic evidence, although it may consider the context in which the contract was written, including the subject matter, the purpose of the contract, and the circumstances surrounding its making, all to help ascertain what the parties intended when they made the contract. The trial court then enforces the contract in accordance with the plain meaning its language would be given by a reasonable person. All of these issues—deciding whether a contract is unambiguous, determining the parties' intent from the unambiguous language, and enforcing the contract in accordance with its plain meaning—involve questions of law for the trial court. When we undertake *de novo* review of the trial court's conclusions of law, we follow the same familiar path. *See Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.,* 2003 WY 139, ¶¶ 7–8, 78 P.3d 679, 681–82 (Wyo.2003), *and cases cited therein.*

*Horse Creek Conservation Dist. v. State ex rel. Wyo. Attorney Gen.,* 2009 WY 143, ¶ 25, 221 P.3d 306, 315 (Wyo.2009) (quoting *Fox v. Wheeler Elec., Inc.,* 2007 WY 171, ¶ 10, 169 P.3d 875, 878 (Wyo.2007)). This Court has previously acknowledged that the parties to a written agreement may orally waive or modify their rights under the agreement. *Keever v. Payless Auto Sales, Inc.,* 2003 WY 147, ¶ 12, 79 P.3d 496, 499 (Wyo.2003). Moreover, we have recognized that a written agreement may be modified through course of conduct. *Id.* at ¶¶ 12–14, at 499–500.

Wyoming law is clear that the party asserting a written agreement was modified by the subsequent expressions or conduct of the parties must prove so by clear and convincing evidence. *Ruby Drilling Co. [v. Duncan Oil Co.,* 2002 WY 85,] ¶ 11 [, 47 P.3d 964, 968–69 (Wyo.2002) ].* The question of whether the alleged modification of the written agreement has been proved by the required quantum of evidence is one to be decided by the trier of fact. *Id.*

In order to prevail on appeal, [the appellant] must overcome the onerous burden of persuading this Court that the district court's findings are clearly erroneous. . . .

*Id.* at ¶¶ 13–14, at 499–500 (some internal citations omitted).

We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. *Life Care Centers of America, Inc. v. Dexter,* 2003 WY 38, ¶ 7, 65 P.3d 385, [389] (Wyo.2003). We affirm the trial court's findings if there is any evidence to support them. *Id.* We accept the evidence of the prevailing party as true and give that party the benefit of all favorable inferences that can fairly be drawn from the evidence, while disregarding conflicting evidence. *Narans v. Paulsen,* 803 P.2d 358, 360 (Wyo.1990). A reviewing court will not set aside the court's findings merely because it might have reached a different result. *Conner v. Board of County Commissioners, Natrona County,* 2002 WY 148, ¶ 23, 54 P.3d 1274, [1283] (Wyo.2002). A finding can be "clearly erroneous" even though there is evidence to support it, if after a review of the entire record, the court "is left with the definite and firm conviction that a mistake has been committed." *Hammons v. Table Mountain Ranches Owners Association, Inc.,* 2003 WY 85, ¶ 12, 72 P.3d 1153, [1155] (Wyo.2003).

*Id.* at ¶ 7, at 498.

[¶ 8] The lease agreement provided the following regarding payment:

3. **RENT** Rent for the balance of this calendar month is $30.00, payable immediately. Thereafter, Tenant agrees to pay the Landlord $40.00 on or before the first day of each month, in advance, as rental for the use of the rental space. . . .

In support of their argument that the contract was modified, the Terrises testified that they made an oral agreement with the manager of the storage facility, whereby the Ter-

rises were allowed to make several payments over the course of the year, rather than monthly payments as required by the written lease agreement, as long as they were paid in full by the end of the year.[3] The Terrises argue that they made payments according to that oral agreement. Kimmel testified that he did have an employee helping him manage the units, but he was never authorized to amend the written lease agreement. Kimmel also testified that he "was in the room with [the manager] when Mrs. Terris requested a delay of two months in 2005 due to her father's illness. I agreed, but there was no discussion or consent whatsoever on deferring rent payments beyond that one period in 2005." Kimmel unequivocally testified that he never authorized a modification of the contract. Moreover, Kimmel testified that he sent late payment notices to the Terrises dating back to April of 2006, three months prior to Kimmel entering the storage unit.

■ [¶ 9] After considering the above evidence, the district court concluded that the Terrises failed in their burden to show by clear and convincing evidence that the written contract had been modified. The district court had the opportunity to hear the evidence of both parties regarding the terms of the agreement and any modification thereto and determined Kimmel's testimony to be more credible. " 'Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence.' " *Morris v. CMS Oil & Gas Co.*, 2010 WY 37, ¶ 12, 227 P.3d 325, 330 (Wyo.2010) (quoting *Lieberman v. Mossbrook*, 2009 WY 65, ¶ 40, 208 P.3d 1296, 1308 (Wyo.2009)). Accepting Kimmel's evidence as true and giving Kimmel all favorable inferences thereto, as required, we cannot say that the district court's finding that a contract modification did not occur was clearly erroneous. Accordingly, the district court did not err as a matter of law by finding that the lease agreement was clear and unambiguous, requiring the Terrises to pay rent on a monthly basis, and their failure to do so was a breach of the agreement.

■ [¶ 10] Finally, we will address the Terrises' argument that the district court erred as a matter of law in finding that Kimmel did not breach the contract by disposing of their property. The Terrises note that the default provision of the lease agreement provides in part that

> In [the event of default], Tenant agrees that Landlord shall have the right to store the property at Tenant's expense, or to sell the property, without the requirements of civil action or judgement [sic], at public or private sale, and to apply the proceeds of sale first to Landlord's costs and then to all amounts due from Tenant to Landlord.

The Terrises argue that Kimmel breached the lease agreement by not storing or selling their property, but instead disposing of it at the dump.

[¶ 11] Kimmel testified that when he entered the Terrises' storage unit he

> found three full propane tanks and two full 5 gallon gas containers, in addition to a lot of junk (moldy horse blankets and lumber) plus some tools. I removed the flammable materials (gasoline tanks and propane tanks) and took junk with no value (lumber, horse blankets) to the dump as part of a much larger trash load, leaving all items of value, including tools, in the unit. I saw no jewelry or apparel.

Contained in the record are several sheets of paper with handwritten itemizations of property, with some containing corresponding estimates of value. Presumably these sheets were prepared by the Terrises as a description of the property that was stored in the unit and represent the property that the Terrises claim is missing. "Mrs. Terris testified that the items listed on the inventory sheets they prepared after the meeting and submitted as evidence were accurate to the best of her recollection." Not all of the lists are identical, nor are all labeled as exhibits, so it is difficult to tell which list or lists were actually entered into evidence and referenced in the above-quoted portion of Mrs. Terris' testimony. What is clear from these lists,

---

3. The record does not contain a transcript of the proceedings but instead contains Defendants' Amended Statement of the Evidence, which was submitted and accepted by the district court pursuant to W.R.A.P. 3.03. All referenced "testimony" is from this statement of the evidence.

however, is that they contain items starkly different from that which Kimmel testified to having encountered when he entered the storage unit. For instance, the lists prepared by the Terrises contain over thirty items, including a diamond ring and earrings, gold earrings, dishes, miscellaneous antiques, and a wedding dress.

[¶ 12] Once again confronted with conflicting testimony, the district court was required to make a credibility determination. As noted above, "Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence." *Morris*, 2010 WY 37, ¶ 12, 227 P.3d at 330 (quoting *Lieberman*, 2009 WY 65, ¶ 40, 208 P.3d at 1308). The Terrises failed to persuade the district court that those items of personal property existed or that Kimmel disposed of them, and we do not find anything in the record to suggest otherwise.[4] Consequently, the district court did not err by finding that Kimmel did not breach the lease agreement.

### Did the district court err by finding that Kimmel did not commit a conversion, that Kimmel did not act with willful misconduct, and that Kimmel did not violate the implied covenant of good faith and fair dealing?

[¶ 13] The Terrises argue that Kimmel violated the implied covenant of good faith and fair dealing and committed a conversion of their property when Kimmel failed to follow the lease agreement which required Kimmel to store or sell their property and instead removed their property from the storage unit and disposed of it at the dump. The Terrises also argue that Kimmel disposed of their property willfully in violation of the lease agreement.[5] All of these claims rely on proof that Kimmel removed and disposed of the Terrises' personal property;

however, as discussed above, we affirm the district court's determination that the Terrises failed to prove these pertinent facts and therefore we will not further address these issues. *See supra* ¶ 12.

### Did the district court err as a matter of law when it awarded attorney's fees and costs to Kimmel?

[¶ 14] The Terrises argue that the district court erred as a matter of law by awarding attorney's fees and costs to Kimmel, claiming that such an award was not proper under the attorney's fees provision of the lease agreement. Specifically, the Terrises argue that at the time the Terrises breached the lease agreement, Kimmel had not incurred any attorney's fees or costs relating to the Terrises' breach, and all subsequent fees and costs resulted from defending the conversion claim which are not recoverable under the lease agreement.

> We review a district court's decision regarding the award of attorneys' fees and costs for abuse of discretion. A court abuses its discretion only when it acts in a manner which exceeds the bounds of reason under the circumstances. The burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion.

*Meyer v. Hatto*, 2008 WY 153, ¶ 25, 198 P.3d 552, 557 (Wyo.2008) (internal citations omitted). Wyoming follows the American rule regarding the award of attorney's fees, which rule states that each party is responsible for his or her own fees and costs. *Id.* at ¶ 26, at 557. "A prevailing party, however, is generally entitled to be reimbursed for his attorney's fees and costs when an express contractual authorization exists for such an award." *Id.* at ¶ 26, at 558.

[¶ 15] Regarding attorney's fees, the lease agreement provided:

---

4. Kimmel admits to having removed lumber and horse blankets and disposing of them at the dump. However, the Terrises did not include those items on any of their lists of items allegedly disposed of by Kimmel, those items do not appear to be a subject of the conversion claim, nor do the Terrises present any argument on appeal regarding those items.

5. The lease agreement provides the landlord with indemnity from liability in the event the tenant's property is destroyed or damaged, except in the event that it is destroyed or damaged as a result of the landlord's gross negligence or willful misconduct.

12. *ATTORNEY'S FEES* In the event of any default by Tenant hereunder, Tenant shall pay all costs and expenses incurred by Landlord as a result thereof, including reasonable attorneys fees, whether suit is brought or not.

[¶ 16] As noted above, this case originated as a result of the Terrises' suit against Kimmel for conversion. Kimmel responded by denying the conversion claim and counterclaiming for breach of contract. The Terrises argue that the attorney's fees incurred by Kimmel arose out of their conversion claim, not as a result of any default under the lease, and therefore the Terrises insist that attorney's fees are not recoverable under the lease agreement. We disagree.

[¶ 17] The attorney's fees provision of the lease agreement does not limit the availability of fees and costs only to those arising out of claims initiated by the landlord. Rather, it states that the tenant shall pay any costs, including attorney's fees, resulting from "any default by Tenant." Both the conversion claim and the breach of contract counterclaim arose directly from the Terrises' default under the lease agreement. Kimmel exercised his right of entry into the unit provided for in the lease agreement and allegedly disposed of the Terrises' property only after the Terrises breached the lease agreement by storing flammable or explosive materials, and after the Terrises defaulted by failing to make timely payments.[6] The Terrises would not have asserted their unsuccessful conversion claim, and Kimmel would not have incurred attorney's fees defending against that claim and asserting a successful counterclaim for breach of the lease agreement if not for the Terrises' default under the lease agreement. Accordingly, we cannot say that the district court abused its discretion in awarding attorney's fees and costs.

## CONCLUSION

[¶ 18] The Terrises failed to prove by clear and convincing evidence that the written lease agreement was modified. Conse-

quently, the district court did not err in finding the Terrises in breach of the lease agreement for failure to make timely rental payments. The Terrises also failed to prove that Kimmel removed or disposed of any of the Terrises' personal property. As a result, the district court did not err in finding that Kimmel had not breached the lease agreement, committed a conversion, acted willfully in violation of the lease agreement, or violated the covenant of good faith and fair dealing. Nor did the district court abuse its discretion in awarding attorney's fees and costs to Kimmel pursuant to the lease agreement, as those fees and costs were a direct result of the Terrises' default under the lease agreement.

[¶ 19] Affirmed.

---

6. The lease agreement allows the landlord "to terminate this agreement and/or take possession of the rental space and all property located there-
in" in the event that the tenant fails to pay rent within 14 days of it being due.