KITE, Justice,
dissenting, with whom HILL, J., joins.
[¶ 73] The record in this case, together with this Court's opinion in Platt v. Platt, 2011 WY 155, 264 P.3d 804 (Wyo.2011) (Platt 1), supports the district court's decision to select the Westerly Ditch and that decision should be affirmed. The majority's decision will waste the parties' time and money, as well as, unnecessarily expend judicial resources. Consequently, I respectfully dissent.
[T 74] The 2010 district court order partitioned the property and set out in significant detail the basic structure for the post-partition irrigation system including providing the general location of the Dedicated Ditch on the west side of the Trust's property. The order stated:
5. For the 2010 irrigation season, the parties and the ranch property partitioned hereby, shall maintain its historic water right operation and distribution system for calendar year 2010.[13] The following irrigation and water rights division shall be completed and implemented beginning in the Spring of 2011. In making this division/allocation of water rights, except for the construction of the Dedicated Ditch as provided herein, it is not the intention of the Court to change the historic use and manner of use previously made of the water rights. The Court recognizes that Wyoming water law is based on the doctrine of prior appropriation. Under Wyoming water law, since water is appurtenant to the lands for which it is appropriated, the Court orders that adjudicated water rights remain with the lands awarded to each of the parties. However, to the extent that there is water available in excess of the adjudicated water rights each party will hold or be entitled to under the doctrine of *449 prior appropriation, the Court orders that such water, including flood irrigation water, be split equally between the lands awarded to the Plaintiff and those lands awarded to the Defendants, for which appropriations exist.
The parties shall install a measuring device in the King Turnbull Ditch at the approximate location where the King Turnbull Ditch crosses the east line of the NEZk NW4 of Section 88, Township 14 North, Range 82 West, for the purposes of measuring all of the water in the King Turnbull Ditch. The parties shall install a second measuring device at the point of beginning of what will be a new Dedicated Ditch for the purposes of delivering water to the lands awarded to the Defendant. The Dedicated Ditch would establish a headgate and measuring device located at approximately the SE corner of the SW4 of Section 28, Township 14 North, Range 82 West. It would then run in a northwest erly direction approximately three-quarters of a mile across lands awarded to the Plaintiff at such location as the parties may jointly agree to the approximately NW corner of the SE% NW4 of Section 28, Township 14 North, Range 82 West, for the benefit of those lands awarded to the Defendants. The location of the Dedicated Ditch shall be specifically described and be a permanent easement across those lands on which it is located. In the event the parties are unable to agree on the exact location of the Dedicated Ditch, to serve those lands awarded to the Defendants by September 1, 2010, then, at the request of the Defendant, the Commissioners acting herein will be reengaged and shall employ an engineer and ... return to the lands with the engineer for the purposes of determining the exact location for such Dedicated Ditch.
The cost for purchasing and installing all headgates and measuring devices as well as the costs incurred in engineering and constructing the Dedicated Ditch shall be split equally between the parties to the extent assistance is not available through NRCS. After installation and construction of the headgates and measuring devices, the costs relative to the maintenance of the first measuring device located at the approximate point where the King Turnbull Ditch crosses the east line of the NE4 NW 4 of Section 88, Township 14 North, Range 82 West, would be shared equally by the parties. Future maintenance costs incurred in the maintenance of the headgate and second measuring device located at the approximate SE corner of the SWL of Section 28, Township 14 North, Range 82 West, shall be the responsibility of the Defendants and the cost of maintaining the Dedicated Ditch onee constructed shall also be the responsibility of the Defendants.
6. Each party shall have with respect to their water, water rights, ditch, and ditch rights an inviolable right to go upon all of the lands covered by this Order and to follow their ditches from their base of use to their source of beginning for the purpose of protection, maintenance, operation, repair and all other necessary or incidental activities to assure the full use and enjoyment of their water, water rights, ditch and ditch rights, without hindrance by any other party.
7. Each party shall conduct themselves and construct, operate and maintain, use and repair their water and irrigation systems in such a manner so as not to cause any damage to the other party or the other party's property or so as to interfere with the reasonable operation and use of the other party's water or irrigation systems, canals, ditches, pipes, flumes, ditch rights, headgates, diversions, dams, weirs, measuring devices and structures used in conveying and regulating the flow of water of whatever character or type.
8. The parties shall equally share in the costs of completing any surveys necessary to accomplish the division set forth above. Further, the parties shall equally share in the costs of constructing any boundary fences necessary to separate the two properties. Location of any fences will be agreed upon by the parties or by registered survey.
(footnote added).
[¶ 75] In Platt I, we affirmed the district court's partition order. The location of the *450 Dedicated Ditch on the west side of the Trust's property was not questioned in the first appeal. Instead, the only issue raised in that case was whether the district court could reject the commissioners' recommendation to award the Trust an easement (Easement 3) over property awarded to Alice in the partition to give it better access to the King Field. The district court decided not to include Easement 3 in its partition decision, and the Trust argued on appeal that the district court did not have authority to modify the commissioners' recommendation. Id., ¶¶ 14-15, 264 P.3d at 807. We reviewed the partition statutes and concluded that they were supplemented by equitable principles which allowed modification of the commissioners' recommendation. Id., ¶¶ 15-20, 264 P.3d at 807-11. 'We noted the Trust's appellate argument was somewhat incongruous given it had requested at the district court hearing that the commissioners' recommendation be modified to actually give it title to the 13.15 acre parcel covered by Easement 3. Id., ¶¶ 7-10, 20-21, 264 P.3d at 805-07, 811. We affirmed the district court's decision to reject Easement 3, altogether, and leave the 13.15 acre parcel in Alice's portion of the partitioned property.[14] Id., ¶ 1, 264 P.3d at 804.
[¶ 76] The complete record of the original partition proceeding is not included in the record of the appeal at bar. Our standards for appellate review require, under those circumstances, that we presume the evidence in that trial supported the court's original factual findings and conclusions of law. Moreover, our rules of finality require that we respect the original order because it was not questioned in the first appeal. See, eg., Nickle v. Bd. of County Comm'rs of Platte County, 2007 WY 115, 117, 162 P.3d 1208, 1218 (Wyo.2007); Sundance Mt. Resort, Inc. v. Umion Tel. Co., 2007 WY 11, T 18, 150 P.8d 191, 196-97 (Wyo0.2007). In addition, neither party contended the order in Platt I was not final.
[T77] It is true, as pointed out in the majority opinion, that the district court did not specifically identify the location of the Dedicated Ditch in 2010. It did, however, set out its fundamental parameters, approximate starting and ending points and a general location. The district court's instructions to the commissioners upon reappointment were to locate the Dedicated Ditch in accordance with the original order. The Westerly Ditch is the only one of the three alternatives considered in the 2018 proceeding that met the requirements set out in the 2010 order.
[T 78] Importantly, the general location of the ditch and its incumbent construction costs and other concerns were part of the original partition decision. The commissioners and Alice ignored the original order in proposing, respectively, the Commissioners Ditch and the North/South ditch as the Dedicated Ditch,. If the district court would have accepted either of those alternatives, it would have undermined the equitable balance it achieved in the original partition. The district court's decision in 2013 to approve the Westerly Ditch actually preserved the underlying basis of the original partition.
[¶ 79] Alice claims in her appellate brief that "all of the parties involved" agreed, during the second proceeding, that a ditch following the parameters set out in the original order was not feasible. The record does not support that assertion given the Westerly Ditch was proposed by the Trust and ultimately approved by the district court. In addition, two of the three commissioners stated at the hearing that the Westerly Ditch was likely a better alternative than the Commissioners Ditch because its location on the western portion of the Trust's property would require less interaction between the parties, fewer parallel ditches, erossovers, and vehicle crossings, and have less impact on the Trust's irrigated property.
[¶ 80] The district court's 2012 order reappointing the commissioners and directing them to locate the Dedicated Ditch instructed the commissioners to "act in accordance with their prior oath and the Final *451 Judgment and Order Partitioning Real Property" entered in 2010. The district court ordered the commissioners to locate the Dedicated Ditch including the two measuring devices in accordance with the general parameters contained in the 2010 order. The ditch proposed by the Trust in the see-ond proceeding met the general parameters set out in the 2010 decision. The district court's order approving the Westerly Ditch as the Dedicated Ditch specifically stated that it "comports with the location set forth in the [2010 order] which remains in effect and is not modified in any way by this order." Thus, Alice's statement that everyone agreed that the ditch could not feasibly be located in accordance with the 2010 order is not supported by the record before us and is, in fact, contradicted by the fact that the Westerly Ditch did comply with that order.
[¶ 81] Alice's concerns about the costs of the Westerly Ditch, the need to obtain an easement from the Kraft Ranch, and the possibility of a petition for a new means of conveyance could have, and should have, been raised during the first partition action. Although other aspects of the partition were appealed in Plait I, no one contested the district court's decision about the irrigation system, even though Alice was surely aware that the North-South (Historical) Ditch, which she now champions, was not an option under that ruling. Furthermore, the general location of the ditch on the west side of the Trust's property as set out in the first partition order required an easement from the Krafts in order to get the water out of the King Turnbull Ditch. Alice knew that at the time of the first order, and did not appeal or otherwise object on that basis. Consequent ly, she should have to live with that, whether under the principles of res judicata, collateral estoppel, and/or the law of the case.
[¶ 82] In my view, the district court's order was not improper simply because it required further action to be taken to effectuate it. With regard to obtaining permission to utilize the Kraft Ranch land for irrigation purposes, the record adequately supports the district court's ruling that permission had been secured, even though a formal easement or agreement was not part of the record. The commissioners' recommendation stated:
Kraft Ranches, Inc., owner of the property where the measuring devices and head gate are to be located, will allow easement for Dedicated Ditch, access to and from the location, dirt materials necessary for installation and maintenance of same at no cost. Costs associated with any paper work or surveying work deemed necessary to accomplish this shall be shared by the parties of the partition. Owners of Kraft Ranches, Inc., need to be notified of any upcoming work and reserve the right to advise and oversee any construction or maintenance on their property.
Jerry Kraft was a commissioner in the partition 'action and, when called to testify at the evidentiary hearing, indicated that he represented Kraft Ranches, Inc. He gave no indication at the hearing that the Platts' ability to obtain an easement over Kraft Ranch property for either the Commissioners' Ditch or the Westerly Ditch was in question. In addition, Mr. Kraft's signature on the commissioners' report with the above-quoted language certainly indicated that he had authority to act on behalf of Kraft Ranches, Inc., even if a formal corporate authorization for the easement had not yet been executed.
[¶ 83] As the appellant in this action, Alice bears the burden of establishing the district court's finding that an easement could be obtained was clearly erroneous. See Thomson v. Wyo. In-Stream Flow Comm., 651 P.2d 778, 788 (Wyo.1982). Our standard of review requires that:
[wle do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. We affirm the trial court's findings if there is any evidence to support them. We accept the evidence of the prevailing party as true and give that party the benefit of all favorable inferences that can fairly be drawn from the evidence, while disregarding conflicting evidence.
Terris v. Kimmel, 2010 WY 110, ¶ 7, 236 P.3d 1022, 1025 (Wyo.2010) (citations omitted).
[T 84] The majority's decision has the effect of reversing this standard of appellate *452 review. When the correct standard with the appropriate inferences is applied, it is clear that Alice has not satisfied her burden of showing the district court's conclusion was erroneous. In fact, the record establishes just the opposite-Kraft Ranches, Inc. was willing to give an easement for the area where the new Dedicated Ditch headgate and measuring devices would be located. Of course, if a specifically described easement document cannot be obtained from the Kraft Ranch, condemnation is an available means of securing a right for Alice's irrigation works to cross the Kraft Ranch property. Wyo. Stat. Ann. § 1-26-815.
[T85] Likewise, to require the parties to go through a process to obtain Board of Control approval of a change in the means of conveyance before the order is considered final is unnecessary. This situation presents a classic chicken/egg type conundrum. Alice may not be able to petition to change her means of conveyance until the court has approved the partition with its incumbent ditch rights. In Altaffer v. Cross (In re Cross), 2013 WY 79, ¶¶ 6, 12-14, 25, 304 P.3d 932, 934, 936, 938 (Wyo.2013), we approved a private road even though the petitioners still needed to secure a permit from the Bureau of Reclamation to gain full access to a public road. We held that, given the Bureau of Reclamation would not issue the permit unless the petitioners could show they had legal access to its property, the rule of reason justified granting the private road first on the condition that a permit would ultimately be obtained. Id.
[¶ 86] It is not unusual for a court to order action to be taken to effectuate its judgment that will require the future cooperation of non-parties. For example, district courts routinely order property to be sold or refinanced to accomplish property division in divorcee cases. Such orders presuppose the parties will have to obtain the cooperation of non-parties such as a bank for refinancing or a realtor and purchaser for a sale. Indeed, in this case, the 2010 order directed: transfer of a brand which required future action by the Wyoming Livestock Board; auction of the ranch's equipment with the proceeds to be divided between the parties which involved an auctioneer and buyers; transfer of grazing permits which required approval from the National Forest Service and the Bureau of Land Management; and collection of the proceeds of a hay sale which required cooperation and action from a third party. If the parties are unable to accomplish such tasks, they can apply to the court for a modification of the order.
[¶ 87] Questioning, as the majority opinion does, whether the orders were final because a few matters still need to be accomplished creates a precedent that could unnecessarily hamstring district courts as they craft solutions to many kinds of disputes. We have, in the contexts of probate and partnership dissolution, ruled that orders were final even though there was still work left to be done. In Jubie v. Dahlke (In re Estate of Dahlke), 2014 WY 29, ¶ 38, 319 P.3d 116, 126 (Wyo.2014), we held a decree of estate distribution was final and subject to appeal even though the property still needed to be distributed, explaining:
As of the date a decree of distribution is entered, the share of the estate each heir or devisee will be awarded has been determined, and that person can meaningfully challenge the ruling if she believes it to be incorrect. On the other hand, distribution of estate assets may take considerable time, as when real property must be sold and the proceeds of the sale distributed. If a decree of distribution were not final and appealable, an aggrieved party would be denied a prompt appeal of the probate court's distribution decision. Cf., In re Hartt's Estate, 75 Wyo. 305, 380-82, 295 P.2d 985, 1014-15 (1956). It would serve no useful purpose to delay an appeal until distribution had been made, and even further until an order closing the estate had been entered.
[T88] This Court used the same type of rationale to review the district court's plan to distribute partnership assets in Weiss v. Weiss, 2008 WY 30, ¶¶ 12-13, 178 P.3d 1091, 1096-97 (Wyo.2008). We stated the district court's order dissolving a partnership and setting over parcels of land to each partner was considered final even though a formal *453 survey and conveyance of parcels of property was not yet completed. We explained: "We are satisfied that the district court's order is appealable and, moreover, it is as 'final an order as could be fashioned in this case without causing gross diseconomies of effort to the parties, to the district court, and to this Court." Id.
[¶ 89] Although a different statutory scheme is involved in the case extant, the underlying policy is no different. If we require the parties to obtain approval from the Board of Control and finalize the easement with the Kraft Ranch before they can appeal the district court's general order of partition or location of the Dedicated Ditch, they could potentially waste all of that time and expense if the district court's decision were reversed.
[¶ 90] The majority opinion also focuses on what it suggests are excessive costs associated with the Westerly Ditch,. Those concerns do not justify a finding that the district court abused its discretion by approving the Westerly Ditch,. The possibility of obtaining funding from the United States Department of Agriculture, Natural Resources Conservation Service (NRCS) is mentioned repeatedly in the record, indicating that significant federal subsidization of the costs may be available if the project can be designed to meet NRCS requirements.[15] In addition, the district court ordered the parties to equally share the costs in excess of the grant funding. So, in terms of equity, the costs issue was essentially a wash,. The fact that the costs will be shared equally will also provide the parties with an incentive to find the most cost-effective approach. If those equally shared costs are a problem for the parties, there is presumably no reason that they could not still enter into an agreement outside of the court's order, such as cooperating in the use of the North/South Ditch, and have it approved by the district court.
[¶ 91] Alice also expresses concerns that she, alone, will bear the risk of the Westerly Ditch not being effective to convey water to her property. Again, those concerns should have been raised in the original proceedings. In any event, the district court took that risk into account and alleviated it by ordering the parties to share the initial costs of construetion and installation of a workable irrigation system. Therefore, the Trust will have to share equally in the cost of creating a ditch that will effectively supply irrigation water to Alice's property.
[¶ 92] I also depart from the majority opinion's statement that the commissioners and district court did not finish their jobs because they did not specifically determine the costs of the Westerly Ditch and determine whether that expense would manifestly injure the value of the entire partition estate. In the original partition action, the commissioners and the district court specifically determined that the partition, with the location of the Dedicated Ditch on the west side of the Trust's property, would not manifestly injure the value of the property. That decision was not challenged in Platt I. Further, the commissioners were not instructed in either appointment to specifically determine the costs of improvements that would have to be made to accomplish the partition, in general, or the cost of the Dedicated Ditch, in particular. Additionally, the record currently before us does not demonstrate that Alice requested such an instruction.
[¶ 98] There is no statutory requirement for a specific determination of the cost of the ditch. The relevant statute is Wyo. Stat. Ann. § 1-82-106, which simply states:
In making the partition, the commissioners must examine the estate and set apart the same in such lots as will be most advantageous and equitable, having due regard to the improvements, situation and quality of the different parts.
In Platt I, ¶ 17, 264 P.3d at 808, we noted that Field v. Leiter, 16 Wyo. 1, 90 P. 378 (1907), was the most comprehensive Wyoming decision on partition prior to Platt I. One of the issues in Field was whether the commissioners' report was inadequate under the partition statutes because it failed to specifically describe the character and situation of *454 the premises, or to state that the properties had been equitably and advantageously partitioned. Id. at 388-90. This Court held there were no specific statutory requirements for the commissioners to make those findings and, consequently, their omission from the commissioners' report was not a basis for rejecting it. Id. Likewise, the commissioners' and district court's failure to make specific findings about the cost of the ditch in this case did not violate the partition statutes or the instructions.
[¶ 94] The commissioners determined that no manifest injury to the property would occur from the partition when they recommended a property division, with the Dedicated Ditch being located on the west side of the Trust's property, in Platt I. The only statutory reference to "manifest injury" is in relation to a determination by the commissioners that dividing the property cannot occur without "manifest injury to its value." Wyo. Stat. Ann. § 1-32-109 states:
§ 1-32-109. Appraisement required where estate cannot be divided according to writ; return by commissioners; election to take at appraised value.
When the commissioners are of the opinion that the estate cannot be divided according to the demand of the writ without manifest injury to its value, they shall return that fact to the court with a just valuation of the estate. If the court approves the return and one (1) or more of the parties elects to take the estate at such appraised value, it shall be adjudged to him upon his paying to the other parties their proportion of the appraised value according to their respective rights, or securing the same as hereinafter provided.
Although the total cost of the Westerly Ditch is not certain, even the highest estimate set out in Paragraph 24 of the majority opinion represents less than eight percent of the total $2,277,875 value of the property. Platt I, 15, 264 P.3d at 805. The commissioners, the parties and the district court certainly knew there would be significant expenses involved in constructing the Dedicated Ditch on the western side of the Trust's property. Still, the decision makers determined that the property could be partitioned without manifestly injuring the value of the entire estate when it originally partitioned the property, and Alice did not contest that finding in the first appeal.
[¶ 95] The majority's decision will reopen the entire partition action because, as that opinion rightly recognizes, any ditch which does not meet the parameters set forth in the 2010 order may undermine the original basis for the equitable partition. These parties have been in litigation over this partition since 2007, and we affirmed the district court's partition decision nearly three years ago. To unnecessarily drag out this expensive and divisive family dispute even longer does a disservice to the parties and the judicial system.

, When the Trust petitioned the district court to reappoint the commissioners to specifically locate the Dedicated Ditch, Alice objected on the basis that she had the right, under the 2010 order, to continue using the North/South (Historical) ditch even after the 2010 irrigation season. In other words, she argued that she could choose the North/South ditch as her Dedicated Ditch. The district court properly rejected Alice's argument. Her interpretation of the order completely ignores the obvious intent to locate a new Dedicated Ditch for her use beginning in 2011. There would have been no reason to include the approximate location of the Dedicated Ditch in the original order if the court intended the North/South ditch to be the Dedicated Ditch.

. Paragraph 8 of the majority opinion suggests the 13.15 acre parcel at issue in Platt I pertained to the proposed new ditch. However, the district court's order and our opinion indicate the acreage was not related to the new ditch construction; rather, it was intended to allow the Trust shorter access to the King Field.

. Gene Carrico, another commissioner in this matter, testified at the hearing that funding may also be available through a state task force.